UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| TIMOTHY McKINNEY, individually and | ) | |
| as personal representative of the estate of | ) | |
| Michael McKinney, deceased, and LISA | ) | |
| McKINNEY, individually, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:04-cv-294-RLY-TAB |
| | ) | |
| ROBERT DUPLAIN, GENE BURTON, in | ) | |
| their individual capacities, | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANT GENE BURTON'S MOTION FOR SUMMARY
JUDGMENT**

On Sunday, November 8, 2003, Michael McKinney died after being shot four

times by Robert Duplain, a Ball State University police officer.  Michael's father,

Timothy McKinney, acting in his own right and as representative of his estate, and

Michael's mother, Lisa McKinney, bring this action under 42 U.S.C. § 1983 against

Officer Duplain and Ball State University Police Department Chief Gene Burton in their

individual capacities.  Plaintiffs allege Chief Burton showed reckless disregard for

Michael's constitutional right to be free from excessive force by failing to properly train

and supervise Officer Duplain.  Chief Burton now moves for summary judgment.  For the

reasons set forth below, the court **GRANTS** said motion.

1

## I.      Factual Background

Chief Burton raises a number of objections to the evidence cited by Plaintiffs. These include: (1) the affidavit of Renee Patterson on grounds of hearsay; (2) the deposition of Sgt. Rhonda Clark to the extent that it contains hearsay; (3) the deposition of Joseph Winkle, Chief of the Muncie Police Department, the oral statement of Joseph Wehner, former Chief of the BSUP, and the affidavit of Terry Winters, Deputy Chief for the Muncie Police Department, on grounds that these statements contain conclusory opinions of non-expert witnesses; and (4) any evidence concerning Chief Burton's alleged remedial actions after the incident.  Chief Burton also takes exception to certain statements made in Plaintiffs' Response Brief, which he contends are misstatements of the evidence.  The court, having reviewed the evidence and the objections posed, and having determined which objections were meritorious, now finds as follows.

### A.      Chief Burton

Chief Burton has been employed by the Ball State University Police Department (or "BSUPD" or "Department") for twenty-five years and has held the position as Chief, or Director of Public Safety, since November 2002.

At all times pertinent to this lawsuit, Ball State employed 31 police officers. Accordingly, as a practical matter, Chief Burton does not conduct "hands-on" training or supervision for his officers.  Chief Burton is responsible for implementing and enforcing the policies and procedures of the BSPD, but subordinate officers, who are certified trainers, actually train officers in the Department.  Corporals, sergeants, and other

subordinate officers supervise patrol officers when such supervision is necessary.

Chief Burton was not present during the events of November 8, 2003.

**B.     Officer Duplain's Training**

In April 2003, Officer Duplain joined the Ball State University Police Department. The Department contacted the Indiana Law Enforcement Academy and scheduled him the first available opening, which was for a class commencing in January 2004.  Under Indiana law, an individual may exercise full police powers for a period of one year, following completion of an approved 40-hour "pre-basic" program.  Indiana Code § 5-2-1-9.  The person must attend Academy or equivalent training within a one-year period.

As a member of the Ball State University Police Department, Officer Duplain was required to complete – and did complete – extensive training before he was permitted to go out on calls by himself.  He successfully completed the 40-hour pre-basic program, established by the Indiana Law Enforcement Board, and provided by Indiana Code § 5-2-1-9, which consists of the following:

> police ethics; criminal justice system; Indiana legal system; jurisdiction, Fourth Amendment arrest issues; probably cause; misdemeanor witness rule; arrest warrants; warrantless arrests; search and seizure; exceptions to search requirements; physical evidence; suspects ID; Miranda; Indiana Penal Code; traffic law; DUI; information and complaint summons; hit and run statutes; driver license regulations; local ordinances; emergency vehicle operation course; juvenile procedures; force continuum; introduction to defensive tactics; pressure point control tactics; joint manipulation; handcuffing; handgun safety nomenclature and maintenance; loading/unloading/drawing/malfunctions, firearms qualification.

(Defendant's Ex. O at D00447; Burton Dep. at 20-22; Hiatt Dep. at 44).  In addition to his

initial pre-basic program, Officer Duplain received additional training in physical tactics

and integrated firearms/physical tactics, all prior to November 8, 2003. (Defendant's Ex.

O).

Physical tactics instruction included various techniques for dealing with physically

resistive or assaultive suspects, including takedowns, pressure points, knee strikes, and

leg sweeps.  (Duplain Dep. at 23, 25, 27, 31-32).  Cpl. David Bell, who trained Officer

Duplain, and Officer Matt Gaither, who trained and practiced with Officer Duplain, both

testified that Officer Duplain was familiar with physical tactics. (Bell Dep. at 47; Gaither

Dep. at 17).  Officer Duplain also received a 20-hour course known as "Standardized

Field Sobriety Training" or "SFST."  (Hiatt Dep. at 25; Defendant's Exhibit O).  His

classroom, firing range, and physical training in these and other subjects amounted to 128

hours, which Sgt. Hiatt certified to the State of Indiana.  (Defendant's Exhibit O; Hiatt

Dep. at 18).

In addition to in-service training, Office Duplain successfully completed the

department "Field Training Officer" or FTO program.  (Burton Dep. at 73; Clark Dep. at

41; Clark Aff., ¶ 12, Ex. 1).  This program, which lasted fourteen weeks, provided for an

officer trainee to accompany a senior FTO officer during various shifts.  Trainees are

exposed to real-world conditions throughout the program, during which the senior FTO

officer would gradually introduce the trainees to increased levels of responsibility, to the

point when they handle matters on his or her own. (Burton Dep. at 23).  The FTO training

program includes firearms training, physical tactics (including PPCT – pressure point

4

control tactics), ground fighting, and edged-weapon fighting.  (Burton Dep. at 26; Bell

Dep. at 45).  No Ball State police officer is permitted to patrol by himself or herself

unless and until he or she has passed the pre-basic program and field training programs.

(Burton Dep. at 95-96).

 Any other facts necessary to this opinion will be discussed below.

## II. Discussion

### A. The Claims Against Chief Burton Are Official Capacity Claims

 On November 18, 2004, the court dismissed Plaintiffs' official capacity claims

against both Officer Duplain and Chief Burton on grounds that under section 1983, Ball

State University is considered to be a part of the State of Indiana.  Since a suit against

Officer Duplain and Chief Burton is a suit against the State of Indiana, the court

concluded that both are immune from suit under the Eleventh Amendment.

 Plaintiffs allege that Chief Burton was acting in his individual capacity when he

participated in creating, implementing, and maintaining all policies and procedures

relating to Ball State University police officers and when he developed and maintained

the police department's policies and customs.  (Complaint ¶¶ 24, 25, 37).  They also

allege that Chief Burton acted with "deliberate indifference" in performing these acts.

(Complaint ¶¶ 25, 29, 38, 41).

 The Seventh Circuit assumes that an action is an official capacity suit where the

"indicia of an official policy or custom are present in the complaint." *Hill v. Shelander*,

924 F.2d 1370, 1373 (7th Cir. 1991).  Where the "allegations [] clearly establish that it is

the defendant's actions in his official capacity that form the basis for the constitutional deprivation which is alleged in th[e] complaint," the court assumes plaintiff has brought an official capacity suit.  *Id*.  In other words, the court will presume that an official acting under color of state law giving rise to liability under section 1983 is being sued in his official capacity.  *Id.*; *see also Holly v. City of Naperville*, 571 F.Supp. 668, 673 (N.D.Ill. 1983).

Even though the Complaint uses the legal term of art  "deliberate indifference" – the legal standard for an individual capacity claim –  the fact remains that Plaintiffs' allegations against Chief Burton relate solely to his official role as Chief of the BSUP. Plaintiffs' Response Brief fares no better, as it wholly fails to set forth facts indicating any type of individual liability on the part of Chief Burton.

## B.    Plaintiffs Present No Evidence to Support An Individual Capacity Claim

The Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton v. Harris*, 489 U.S. 378, 388 (1989).  Deliberate indifference may be shown in one of two ways.

> First, a [policymaker] shows deliberate indifference when [he] fails to train his employees to handle a recurring situation that presents an obvious potential for a constitutional violation and this failure to train results in a constitutional violation.  Second, a [policymaker] shows deliberate indifference if [he] fails to provide further training after learning of a pattern of constitutional violations by the police."

6

*Dunn v. City of Elgin*, 347 F.3d 641, 646 (7th Cir. 2003).  Deliberate indifference is derived from the policymaker's failure to act even though he has actual or constructive notice that such failure is likely to result in constitutional deprivations.  *Robles*, 113 F.3d at 735 (citing *Cornfield*, 991 F.2d at 1327).

Plaintiffs failed to show a "pattern of constitutional violations."  They have alleged, however, that Officer Duplain did not have adequate training in two areas: in dealing with drunk college students and in defending himself against someone charging at him.  Either of these could present "recurring situations" with a "potential for a constitutional violation." *Dunn*, 347 F.3d at 646.   But the Plaintiffs have failed to produce evidence of this lack of training.  To the contrary, the record conclusively shows that Officer Duplain was trained in these areas.

Plaintiffs' expert witness on police training, Ken Katsaris, acknowledged that Officer Duplain had experience with drunk college students during his FTO training. (Plaintiffs' Ex. KK, at 32-33).  Similarly, as to training in non-lethal techniques of self-defense, Mr. Katsaris acknowledged that Officer Duplain had had precisely that training: "palm thrust," "straight on punch," "angle kick," "common peroneal," "shin kick," "forward punch," "palm heel," "forearm take-down," "butterfly grounding," "outside body drop," "inside body drop," and "weapons retention," all of which – according to Mr. Katsaris – are defensive tactics used against an attacker. (Plaintiffs' Ex. KK at 185-88).

Since Chief Burton was officially responsible for his department's training policies and procedures, and since Officer Duplain had training in precisely the areas that

7

Plaintiffs allege were deficient, it follows that Chief Burton did not act with "deliberate indifference" with respect to these areas of training.

### C.    Chief Burton Is Entitled to Qualified Immunity

In determining whether qualified immunity applies, the court employs a two-step inquiry. *Saucier v. Kath*, 533 U.S. 194, 200 (2001). First, the court asks whether the facts as alleged by the non-moving party show the officer's conduct violated a constitutional right. If so, the court must determine "whether the right was clearly established." *Id.* at 201; *Leaf v. Shelnutt*, 400 F.3d 1070, 1079-80 (7th Cir. 2005).

Plaintiffs' Response Brief fails to address the qualified immunity analysis as articulated above. Rather, Plaintiffs contend the analysis for Chief Burton is the same as it is for Officer Duplain. Plaintiffs are incorrect. Plaintiffs accuse Officer Duplain of using excessive force, but they accuse Chief Burton of failing to properly train Officer Duplain. Analysis of the former focuses on the question of whether Officer Duplain acted reasonably under the circumstances. Analysis of the latter focuses on the question of whether Chief Burton acted with deliberate indifference with respect to whether the officer's training was constitutionally adequate. Plaintiffs failed to meet their burden of adducing evidence regarding whether or not Chief Burton is entitled to the benefit of qualified immunity.

**III.    Conclusion**

For the reasons set forth above, the court finds Defendant Gene Burton's Motion

for Summary Judgment must be **GRANTED**.


**SO ORDERED** this  25th   day of August 2005.


RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Electronic Copies to:

Lester H. Cohen
DEFUR VORAN
lcohen@defur.com

Michelle Lynn Cooper
DEFUR VORAN LLP
mcooper@defur.com

Geoffrey Nels Fieger
FIEGER FIEGER KENNEY & JOHNSON
info@fiegerlaw.com

Robert M. Giroux Jr.
FIEGER FIEGER KENNEY & JOHNSON
info@fiegerlaw.com

John F. Kautzman
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
jfk@rucklaw.com

9

Thomas R. Malapit
DENNIS WAGNER & ABRELL PC
malapit@dwapc.com

David M. Mattingly
ICE MILLER
david.mattingly@icemiller.com

Scott E. Shockley
DEFUR VORAN
sshockley@defur.com

Bradley L. Williams
ICE MILLER
williamb@icemiller.com