UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TIMOTHY McKINNEY, Individually and ) <br> As Personal Representative of the Estate of ) <br> Michael McKinney, Deceased, and LISA ) <br> McKINNEY, Individually, ) <br>             Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> ROBERT DUPLAIN, GENE BURTON, In ) <br> their Individual Capacities, ) <br>             Defendants. ) | | 1:04-cv-294-RLY-TAB |

**ENTRY ON DEFENDANT'S RENEWED MOTION FOR RECONSIDERATION OF THIS COURT'S ENTRY DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

On September 12, 2006, the Seventh Circuit Court of Appeals issued its opinion on Officer Duplain's qualified immunity appeal. Pursuant to *Johnson v. Jones*, 515 U.S. 304 (1995), the Court found that it lacked jurisdiction to review this court's conclusion that a genuine issue of material fact existed as to whether Michael McKinney ("McKinney") charged Officer Duplain. Officer Duplain now asks the court to reconsider its Entry denying his motion for summary judgment. For the reasons set forth below, the court **DENIES** his motion.

**I.     Background**

The sole issue before the court is whether the evidence produced by McKinney raises the following genuine issue of material fact for trial: whether it was objectively

1

reasonable for Officer Duplain to use deadly force against McKinney. This inquiry necessarily turns on whether McKinney charged Officer Duplain before Officer Duplain fatally shot McKinney.

In denying Officer Duplain's motion for summary judgment, this court relied, in part, upon McKinney's expert witnesses, Dr. Spitz, a forensic pathologist, and Mr. Balash, a ballistics and crime scene expert. They both testified that Officer Duplain fired the first two shots while McKinney was standing by a tulip tree in Ms. Poole's backyard with his back left side to him. (*See* Plaintiffs' Ex. CC at 107; Plaintiffs' Ex. GG at 86, 112-18). Upon examination of the evidence, Dr. Baden, a forensic pathologist, also found that Officer Duplain shot McKinney first while McKinney's back was to him. (*See* Plaintiffs' Ex. EE at ¶ 7). This expert testimony provides evidence from which a reasonable jury could conclude that McKinney did not charge Officer Duplain before Office Duplain fired his service weapon at McKinney. If a jury were to believe these experts, Officer Duplain would not be entitled to qualified immunity. Officer Duplain therefore challenges the admissibility of these opinions.

## II.  Standards Governing Expert Testimony

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Civil Procedure and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Federal Rule of Evidence 702 ("Rule 702"), provides:

If scientific, technical, or other specialized knowledge will assist the trier of

> fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

Before admitting expert testimony, *Daubert* requires that the district court function as a gatekeeper to ensure that expert testimony is both relevant and reliable. *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000). "In other words, as a threshold matter 'a district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue.'" *Id.* (quoting *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 590 (7th Cir. 2000)).

In ascertaining whether an expert's opinion pertains to scientific knowledge, the court must consider whether the methodology employed by the expert in reaching his or her conclusion is sufficiently grounded in the "methods and procedures of science." *Daubert*, 509 U.S. at 590. This inquiry ensures that the expert's testimony is based upon more than just "subjective belief or unsupported speculation." *Id*. The court's role as gatekeeper is strictly limited to an examination of the expert's methodology. *Smith*, 215 F.3d at 718. "The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are factual matters to be determined by the trier of fact." *Id.* (citing *Daubert*, 509 U.S. at 595 ("The focus, of

course, must be solely on principles and methodology, not on the conclusions that they generate.")).

When analyzing the relevance of the proposed testimony, the court must determine whether the testimony will assist the trier of fact with its analysis of one of the issues involved in the case. *Smith*, 215 F.3d at 718.

### III.   Discussion

#### A.   The Expert Testimony

The court begins its discussion with a brief overview of Plaintiffs' experts' testimony.

##### 1.   Mr. Balash

As noted above, Mr. Balash is a ballistics and crime scene expert. His investigation of the subject incident included test-firing Officer Duplain's weapon, inspecting McKinney's clothing, reviewing the autopsy photos, and reviewing testimony. (*See* Expert Report of David Balash attached to Plaintiffs' Ex. CC).

As his curriculum vitae reflects, Mr. Balash has over 20 years' experience as a Firearms Examiner with the Michigan State Police. He has participated in and supervised hundreds of crime scene investigations during his more than 25 years with the department. Since 1992, Mr. Balash has worked as a Firearms Examiner/Forensic Consultant. His work entails the examination of evidence, case evaluations, and crime scene reconstruction with the work that he performs at a crime scene laboratory. Mr. Balash has been qualified to render expert testimony in court matters on more than 350

occasions in courts in Michigan, Ohio, Wisconsin, Illinois, and Mississippi.  Mr. Balash is qualified to render an opinion in this matter based upon his skill, experience, training, and education.

      Mr. Balash's expert report reads, in pertinent part:

> [T]he undersigned is of the opinion that Officer Duplain fired two shots striking Mr. McKinney while Mr. McKinney was at the location of the tulip tree in the back yard with his left side/back facing Officer Duplain.

(*See* Expert Report of David Balash attached to Plaintiffs' Ex. CC; *see also* Plaintiffs' Ex. CC at 9, 107).  In his deposition, Mr. Balash explained that in reaching that opinion, he relied upon the testimony of Officer Duplain, who, according to Mr. Balash, "firmly maintains that Mr. McKinney was face on to him at all times during the shooting event . . .".  (*Id*. at 10, 106-07).

      Mr. Balash also testified that the first three shots to McKinney's body could not have been two feet or even three feet from Officer Duplain.  (*Id*. at 126).  Since there was no impregnated gun powder in McKinney's clothing, the shots to the body had to have occurred while McKinney was further than three feet away.  (*Id*. at 77).

      Mr. Balash testified that the fourth shot was to McKinney's face, which occurred from five to six inches away.  (*Id*. at 91).  At that time, McKinney was not looking at Officer Duplain; rather, his face was angled down toward the ground.  (*Id*. at 111-12, 127). This fact is established by the stippling pattern seen on McKinney's face, as well as Mr. Balash's test-firing of the gun. (*Id*. at 111-12, 127).  The autopsy photographs of McKinney's face support his opinion as they show no stippling pattern below the top of

his left eyebrow.  (Plaintiffs' Ex. A; Plaintiffs' Ex. CC at 126-27).

### 2. Dr. Werner Spitz

Dr. Werner Spitz is a forensic pathologist.  Dr. Spitz's experience includes: four years as an Assistant Medical Examiner of the State of Maryland, three years as the Deputy Chief Medical Examiner of the State of Maryland, 16 years as the Chief Medical Examiner of Wayne County, Michigan, 32 years as a pathologist and Chief Medical Examiner of Macomb County, Michigan, Assistant Professor and Clinical Associate Professor of Pathology at the University of Maryland, Associate Professor of  Forensic Pathology at Johns Hopkins University, 33 years as a Professor in the Department of Pathology at Wayne State University, and 28 years as an Adjunct Professor of Chemistry at the University of Windsor.  Dr. Spitz's knowledge, skill, experience, training, and education qualify him to render an opinion in this matter.  (*See* Plaintiffs' Ex. FF).

Dr. Spitz reconstructed the bullet trajectories based upon the autopsy findings as well as his examination of McKinney's clothing and the other tangible evidence. (Plaintiffs' Ex. GG at 5-11, 24; *see also* Plaintiffs' Ex. HH).  Dr. Spitz testified that there were two distinct pairs of parallel bullet holes and trajectories.  (Plaintiffs' Ex. GG at 44-48).  The bullet wounds depict that, when the first shot was fired, Officer Duplain was facing the back of the left shoulder of McKinney. (*Id*. at 86; *see also* Plaintiffs' Ex. HH). The autopsy findings further establish that the bullet that entered the back left side of McKinney traveled from his back to his front, with the final resting location being the right groin area.  (Plaintiffs' Ex. GG at 111).

Based on the close proximity of the shots and the close parallel nature of the trajectories, Dr. Spitz concluded that the first two shots to the left back side and the left back shoulder were fired in rapid succession, with no movement by McKinney in between. (*Id*. at 112-118). After the first two shots were fired, McKinney twisted or turned to face the shooter. Immediately thereafter, the next two shots were fired in rapid succession, striking McKinney in the face and chest while he was collapsing. (*Id*. at 116). The angle of the last two shots to the face and chest was much more downward than the first two, which was due to McKinney's downward progression after the first two shots. (*Id*. at 130-36).

### 3. Dr. Baden

Dr. Baden is a forensic pathologist, and has been certified in that area of expertise since 1966. (Plaintiffs' Ex. EE at ¶ 1). Prior to formulating his opinion, Dr. Baden reviewed the autopsy report, autopsy photographs, photographs of the scene of the shooting and of the physical evidence, the Ball State University Police incident report, the Muncie Police incident report, and the deposition testimony of both lay and expert witnesses. (*Id*. at ¶ 2). Dr. Baden is qualified to render an opinion in this case based upon his knowledge, skill, experience, training, and education.

In his sworn affidavit, Dr. Baden noted that the closest shot was to McKinney's face, which occurred at a distance of approximately six inches. (*Id*. at ¶ 4). The first two shots fired by Officer Duplain were further away and, given the bullet trajectories, occurred "while Mr. McKinney was hunched or bent over and had his back and left side

7

exposed to Officer Duplain." (*Id*. at ¶¶ 4, 7).

### B. Criticisms of the Plaintiffs' Experts' Testimony

#### 1. Mr. Balash

Officer Duplain posits that Mr. Balash withdrew a critical part of his opinion during his deposition; that being, that the first shot to McKinney was while McKinney was near the tulip tree with his back left side to Officer Duplain.

Mr. Balash testified that after he wrote his report, he received additional information, including sketches and diagrams of the scene, an autopsy drawing, and three depositions. (Plaintiffs' Ex. CC at 6). Based upon that information, he testified that his opinion "remain[ed] possible but not very probable unless Mr. McKinney was in a position other than that offered by the witnesses to this event standing or reasonably close to erect." (*Id*. at 9). With respect to his original opinion, as reflected in his expert report, he clarified that his opinion was based upon the testimony of Officer Duplain:

> A:  Again, based on exactly what I have told you that on the information available there are many other places, even when I wrote the report, that Mr. McKinney could have been when the first shot was fired. However, the report was based on the fact that according to Duplain, this was where McKinney was when he saw him; that he turned and faced and charged him; at which point in time he was entirely being faced by Mr. McKinney which cannot possibly explain the shots to the side. Therefore, the only place that he could have been when he had his side to Duplain was at the tulip tree. That's why it's written the way it is.

(*Id*. at 107). The questioning continued:

> Q:  Is that still your opinion today?

> A: If can – that is. If he maintains that position, then that's my opinion.
>
> Q: If who maintains what position?
>
> A: If Duplain says that he faced him and came straight at him and the last shot was eighteen inches from him, the only time those shots could have been administered to Mr. McKinney would have been if he would have been at the tulip tree.

(*Id.*).

Based upon this testimony, the court finds that Mr. Balash did not recant his expert opinion. At trial, Officer Duplain's attorneys will certainly have the opportunity to challenge, through cross-examination, the soundness of the factual underpinnings upon which Mr. Balash bases his conclusions as well as the correctness of his conclusions based on that analysis. This challenge to the admissibility of Mr. Balash's testimony fails.

### 2. Dr. Spitz

Officer Duplain challenges Dr. Spitz's opinion that McKinney was shot in his left arm and side while standing next to the tulip tree on grounds that Dr. Spitz "admitted [during his deposition] that he had no basis for such an opinion." (Plaintiffs' Ex. GG at 83-84).

Dr. Spitz testified that the first shot was fired when McKinney was "somewhere around the [tulip] tree," either "below the tree or to the right side of the tree." (*Id.* at 83). Dr. Spitz testified that he knew the encounter occurred near the tree because that is how Officer Duplain described the encounter. (*Id.* at 83). Upon further inquiry, Dr. Spitz

9

testified that he didn't recall where he obtained that information, but that he believed it was from the evidence he reviewed. (*Id*. at 84).

The record does not reflect that Dr. Spitz's opinion lacks a factual basis. Rather, it reflects a faulty memory. Again, the remedy in such a situation is not to strike the witness, but to allow Officer Duplain's attorneys the right to cross-examine Dr. Spitz at trial. The jury will give his testimony the weight it deserves.

### 3. Dr. Baden

Officer Duplain attacks the opinion of Dr. Baden, stating it "represents the worst sort of conclusory expert opinion imaginable." (Defendant's Motion to Reconsider at 5). A review of Dr. Baden's affidavit, however, reflects that he reviewed numerous pieces of evidence, including the deposition of Officer Duplain and the bullet tracks in McKinney's body. (Plaintiffs' Ex. EE at ¶¶ 2, 4). Based upon those two key pieces of evidence, he concludes that the first two shots had to have been fired by Officer Duplain while McKinney was hunched or bent over and his back and left side was exposed to him, and that the last shot was to his left eye at close range. (*Id*. at ¶¶ 4, 7).

The court finds Dr. Baden's testimony contains a sufficient factual basis to be considered by a jury at trial. Officer Duplain's attorneys are free to cross-examine him with respect to his conclusions, and the jury will give his opinion the weight it deserves.

### C. General Criticisms of Plaintiffs' Experts

Officer Duplain raises a number of other, more generalized objections to the testimony of Plaintiffs' experts. First, he contends that none of Plaintiffs' experts testify

10

"to a reasonable degree of medical or scientific certainty." He contends that they testify to mere "probabilities" and "possibilities," and thus, are of insufficient weight to create a genuine issue for trial. *See Porter v. Whitehall Lab., Inc.*, 791 F.Supp. 1335, 1346 ("Although Indiana law does not require experts to state their opinion to a particular degree of certainty, *Noblesville Casting Div. of TRW v. Prince*, 438 N.E.2d 722, 731 (Ind. 1982), testimony as to mere possibilities will not suffice to place a fact in issue."); *see also Boyd v. Baeppler*, 215 F.3d 603-04 (6th Cir. 2000) (opinions about position of victim's body when shot expressed with "probability" insufficient to support a jury verdict).

    Mr. Balash testified in terms of "possibilities" and "probabilities" when asked to consider the additional information given to him after he completed his expert report. (*See* Plaintiffs' Ex. CC at 6-9). However, as previously discussed, he clarified that if Officer Duplain testifies at trial consistent with his deposition testimony, then his "opinion" that Officer Duplain fired the first two shots at McKinney while McKinney was at the tulip tree with his back left side facing Officer Duplain stands. (*See* Plaintiffs' Ex. CC at 106-07). Given the fact that Mr. Balash has rendered expert testimony in the past, the court interprets the reference to his "opinion" as based upon a reasonable degree of scientific certainty.

    Mr. Balash also spoke in terms of possibilities when asked to explain the position of McKinney's body when the fourth shot was fired. Mr. Balash explained:

    . . . The only reasonable alternative is that either Mr. McKinney was down

11

> with his head moving forward looking at the ground or he was down on the ground looking out forward with his head still – now the gun is above his head. Those are the only two possibilities that I see for that shot to be inflicted.

(*Id.* at 128). The fact that he expressed his opinion in terms of possibilities does not render his testimony inadmissible; rather, it goes to the weight of his testimony, not to its admissibility. *See Noblesville Casting Div. of TRW, Inc. v. Prince*, 438 N.E.2d 722, 731 (1982) ("The degree of certainty in which an opinion or conclusion is expressed concerns the weight to be accorded the testimony, which is a matter for the jury to decide.").

Dr. Spitz expressed his opinion in his expert report in terms of a "reasonable degree of medical certainty." (*See* Expert Report of Dr. Spitz attached to Plaintiffs' Ex. GG). Similarly, in his deposition, he explained that "I have to give you an opinion within a reasonable degree of medical certainty." (Plaintiffs' Ex. EE at 117). Thus, when he states his "opinion," the court infers that it is based upon a reasonable degree of scientific certainty. (*See id.* at 86, 97). To the extent he answered questions of defense counsel in terms of "probabilities," the court finds such testimony goes to the weight of his testimony, not to its admissibility. *See Noblesville Casting*, 438 N.E.2d at 731.

Finally, Dr. Baden expressed his opinions in terms of what is "likely" or what is "most likely." (Plaintiffs' Ex. EE at ¶¶ 7, 8). Again, the court finds, at this stage, that his reference to what is "likely" or "most likely" goes to the weight of his testimony, not its admissibility. *See Noblesville Casting*, 438 N.E.2d at 731. That said, the court will not allow speculative or conclusory expert opinion to be admitted at the trial of this matter.

12

Officer Duplain also objects to the qualifications of Dr. Spitz and Dr. Baden. Specifically, he contends that they, as forensic pathologists, are not qualified to give the key opinion they did in this case: did McKinney charge Officer Duplain before Duplain fired.  They contend that "[s]uch an opinion that reconstructs a shooting taking into account all evidence – wound patterns, topography, powder distribution and ejection pattern of a firearm, bloodstains, etc. – is considerably beyond their expertise as pathologists."  (Defendant's Motion to Reconsider at 16). The record reflects that both Dr. Spitz and Dr. Baden are trained and experienced forensic pathologists who have practiced in their field of expertise for over 25 years.  They are clearly qualified to render an opinion based upon their review of the autopsy report, bullet trajectories, photographs of the scene, police reports, and the relevant testimony.

Third, Officer Duplain objects to Dr. Spitz's and Dr. Baden's opinions on grounds that they lack a "rational or logical methodology."  Both Dr. Spitz and Dr. Baden based their opinions on the autopsy report, autopsy photographs, relevant deposition transcripts and videotapes, and other tangible evidence.  Based upon those pieces of evidence, Dr. Spitz and Dr. Baden concluded that the bullet tracks required a finding that the first two shots fired were to McKinney's back left shoulder and side, and the final two were to his chest and left eye.  (Plaintiffs' Ex. GG at 86, 116; Plaintiffs' Ex. HH; Plaintiffs' Ex. EE at ¶¶ 4, 8).  Their opinions are based upon the methods of science.

Finally, Officer Duplain complains that: (1) Plaintiffs' experts contradict each other, and themselves, on critical matters, and (2) Plaintiffs' experts ignore critical,

undisputed physical evidence.  These matters go to the weight of the proffered testimony, not to its admissibility.

## III.   Conclusion

Having found Plaintiffs' experts's opinions admissible, the court finds a genuine issue of material fact as to whether Officer Duplain's use of deadly force against McKinney was objectively reasonable.   Accordingly, Defendant's Renewed Motion for Reconsideration of this Court's Entry Denying Defendant's Motion for Summary Judgment (Docket # 120) is **DENIED**.


**SO ORDERED** this   16th    day of April 2007.

                                       RICHARD L. YOUNG, JUDGE
                                       United States District Court
                                       Southern District of Indiana


Distribution:

Lester H. Cohen
DEFUR VORAN
lhcohen@charter.net

Michelle Lynn Cooper
BOSE MCKINNEY & EVANS, LLP
mcooper@boselaw.com

Geoffrey Nels Fieger
FIEGER FIEGER KENNEY & JOHNSON
info@fiegerlaw.com

Robert M. Giroux Jr.
FIEGER FIEGER KENNEY & JOHNSON
r.giroux@fiegerlaw.com

John F. Kautzman
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
jfk@rucklaw.com

Thomas R. Malapit
DENNIS WEGNER & ABRELL PC
malapit@dwapc.com

David M. Mattingly
ICE MILLER LLP
david.mattingly@icemiller.com

Scott E. Shockley
DEFUR VORAN
sshockley@defur.com

Bradley L. Williams
ICE MILLER LLP
williamb@icemiller.com